# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

BRANDON KITTLE-AIKLEY,     )
et al.,     )
     )
    Plaintiffs - Appellees,     )
     )
    v.     )     **Case No.: 13-3264**
     )
DONALD CLAYCOMB, et al.,     )
     )
    Defendants – Appellants.     )

Appeal from the United States District Court, Western District of Missouri, Central Division, before the Honorable Nanette K. Laughrey, United States District Judge
District Court Case Number 2:11-cv-04242-NKL

## APPELLANTS' BRIEF

Respectfully Submitted,
**KENT L. BROWN, P.C.**

 _/s/ Kent L. Brown_____
Kent L. Brown    #38992MO
Judith Anne Willis #63327MO
621 East McCarty Street, Ste. A
Jefferson City, MO 65101
Telephone:   (573) 635-4971
Facsimile:   (573) 635-7675
**ATTORNEYS FOR APPELLANTS**

Appellate Case: 13-3264   Page: 1   Date Filed: 12/23/2013 Entry ID: 4108364

# SUMMARY OF THE CASE

After lengthy consideration, the Regents of Linn State Technical College of Missouri, the legal entity governing Missouri's state-wide technical college, adopted a policy requiring new students on all campuses to participate in a drug screening program. Thereafter the President of the college issued procedures governing testing methods, allowing students to seek exclusion from the testing requirement and other issues.

Collection of urine samples proceeded without objection from any student. A few students thereafter sued the President and the Regents in their official capacity seeking a declaration that the procedures issued by the President were facially unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution. The District Court granted a temporary restraining order and later a preliminary injunction. Defendants appealed. This Court vacated the preliminary injunction as being too broad, and found that the policy was not facially unconstitutional. Plaintiffs were allowed to amend their pleadings to include an as-applied challenge. A trial was held and the District Court granted a permanent injunction. Defendants appeal.

Oral argument of 60 minutes total is necessary because the case is complex, with challenged rulings on numerous LSTC programs and various issues.

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Defendant-Appellants, Toni Schwartz, John Klebba, Diane Benetz, Mark J. Collom, Erick V. Kern, J. Scott Christianson and Donald Claycomb hereby state they are all sued in their official capacities as representatives of Linn State Technical College, a public entity of the State of Missouri.  There are no other corporate interests involved.

Appellate Case: 13-3264     Page: 3     Date Filed: 12/23/2013 Entry ID: 4108364

# TABLE OF CONTENTS

SUMMARY OF THE CASE…………………………………………………………………i

CORPORATE DISCLOSURE STATEMENT…………………………………………ii

TABLE OF CONTENTS……………………………………………………………iii

TABLE OFAUTHORITIES…………………………………….…………………v

JURISDICTIONAL STATEMENT……………………………………….......1

STATEMENT OF ISSUES……………………………………………...........2

STATEMENT OF CASE……………………………………………………4

SUMMARY OF ARGUMENT……………………………………………9

STANDARD OF REVIEW…………………………………………………13

ARGUMENT……………………………………………..………………14

I.     **The district court erred in entering a permanent injunction in that Plaintiffs failed to demonstrate their right to a permanent injunction based on the merits of their case, because the challenged policy is constitutional in all respects as to all persons and the district court's Judgment was based on erroneous finding of fact and erroneous application of fact, not based on any substantial or probative evidence.**……………………………………………14

A.     Success on the Merits – LSTC has a valid "special need" for drug testing………………………………………………………………...14

      1. The Factors………………………………………...………....….17
         i.     The Nature of the Privacy Interest…………………………17
         ii.    The Intrusiveness of the Program………………………19
         iii.   The Nature and Immediacy of the Government Interest……..20
         iv.   The Efficacy of the Program…………………………...…..…23

      2. Other Considerations ……………………………………………24

Appellate Case: 13-3264     Page: 4     Date Filed: 12/23/2013 Entry ID: 4108364

B.  No Irreparable Harm Has Been Shown…………………………………….28

C.  Balance of harms – Appellees' alleged harm does not outweigh potential harm to others and themselves……………………………………………..29

D.  The Public Interest Favors Safety and a Reduction in Drug Use…………..30

**II.  The District Court erred in entering a permanent injunction in that educational purpose is a valid special need**……………………………...31

**III.  The District Court erred in entering a permanent injunction based on an as-applied challenge in that the policy at issue has never fully been applied to any person**……………………………………………………..35

**IV.  The District Court erred in entering a permanent injunction in that the remedy ordered is in excess of the relief Plaintiffs requested and is in violation of the Eleventh Amendment proscription against damages against a state institution.** 41

A.  Appellants are Protected by the Eleventh Amendment……………………..42

B.  Appellants Have Not Waived Eleventh Amendment Immunity…………...46

C.  The District Court Had No Subject Matter Jurisdiction Over Retrospective Monetary Relief………………………………………………………………47

D.  The Ordered Relief is Impermissible Retrospective Monetary Relief Sought From State Officers…………………………………………………………...48

E.  The Relief Ordered is Indefinite and in Excess of Appellee's Requests…...51

CONCLUSION……………………………………………………………...53

CERTIFICATE OF COMPLIANCE…………………………………………...54

CERTIFICATE OF SERVICE…………………………………………………55

Appellate Case: 13-3264   Page: 5   Date Filed: 12/23/2013 Entry ID: 4108364

# TABLE OF AUTHORITIES

## Cases

*Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851 (11th Cir. 2013)…………………………………………………………………13, 27, 28

*Board of Ed. of Independent School District No. 92 of Pottawatomie County, et al. v. Earls*, 536 U.S. 822 (2002);………………………………………………16, 17

*Barrett v. Claycomb*, 705 F.3d 315 (8th Cir. 2013)............. 15,16, 17, 18, 19, 21, 24

*Bowen v. Massachusetts*, 487 U.S. 879 (1988)................................................. 50, 51

*Burford v. Sun Oil Co*., 319 U.S. 315 (1943) ........................................................41

*Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 906 (8th Cir. 2012)……13

*Chandler v. Miller*, 520 U.S. 305 (1997).................................................... 25, 27, 41

*Coller v. Mo. Dept. of Economic Development*, 965 F.Supp.1270 (W.D. Mo. 1997)……………………………………………………………………………...42, 50

*Community of Christ Copyright Corporation v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005 (8th Cir. 2011)……………………….....14

*Dolls, Inc. v. City of Coralville, IA*, 425 F.Supp.2d 958 (S.D. Ia. 2006)………….36

*Edelman v. Jordan*, 415 U.S. 651 (1974)…………………………………47, 48, 49

*Esteban v. Central Missouri State College*, 415 F. 2d 1077 (8th Cir. 1969)...........40

*Ex parte Young* (209 U.S. 123 (1908) ............................................... 41, 46

*Fogie v. THORN Americas, Inc.*, 95 F.3d 645, 649 (8th Cir. 1996)………………13

*Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945)................................49

*Gibson v. Arkansas Dept. of Correction*, 265 F.3d 718 (8th Cir. 2001)................43

*Great Rivers Habitat Alliance v. Federal Emergency Management Agency*, 615 F.3d 985, 989 (8th Cir. 2010)……………………………………………………48

*Greenwood v. Ross*, 778 F.2d 448 (8th Cir.1985). ................................................43

*Griffin v. Wisconsin*, 483 U.S. 868 (1987)................................................15

*Hans v. Louisiana*, 134 U.S. 1 (1890) ....................................................43

*Intl. Broth. of Teamsters, Chauffeurs, Western Conference of Teamsters v. Dept. of Transportation*, 932 F2d 1292 (9th Cir.1991)………………………….....   16

*James v. Board of Curators of the University of Missouri, et al.*, 2011WL147910(E.D.Mo)………………………………………………………45

*Knox County Ed. Assn. v. Knox County Bd. of Ed.*, 158 F.3d 361 (6th Cir. 1998)…………………………………………………………………………..16

*Lapides v. Bd. of Regents*, 535 U.S. 613 (2002)...................................................47

*Miener v. State of Missouri*, 673 F.2d 969 (8th Cir. 1982)............................... 47, 51

*Miller v. Wilkes*, 172 F.3d 574 (8th Cir. 1999) ................................................. 22, 32

*Minnick v. Mississippi*, 498 U.S. 146 (1990)........................................................39

*Murphy v. State of Ark.*, 127 F.3d 750 (8th Cir. 1997) ................................... 48, 50

Appellate Case: 13-3264   Page: 6   Date Filed: 12/23/2013 Entry ID: 4108364

*National Treasury Employees v. Von Raab*, 489 U.S. 656(1989)…………………...
..............................…469 U.S. 325……………………15, 16,17, 20, 21,22, 23, 32
*New Jersey v. T.L.O.*, 469 U.S. 325(1985) ...................................................... 15, 32
*New York v. Burger*, 482 U.S. 691(1987) ..............................................................32
*O'Connor v. Ortega*, 480 U.S. 709 (1987) ...........................................................32
*Ormerod v. Curators of University of Missouri*, 97 Fed. Appx. 71 (8th Cir. 2004).45
*Public Service Commission of Utah v. Wycoff Co.*, Inc. 344 U.S. 237 (1952).......41
*Qwest Corp. v. Scott*, 380 F.3d 367, 370 (8th Cir. 2004)…………………………13
*Scott v. PSRS of Missouri*, 2010 WL 3749210 ................................................ 48, 50
*Sherman v. Curators of Univ. of Mo.*, 16 F.3d 860 (8th Cir.1994) ........................43
*Skelton v. Henry*, 390 F.3d 614 (8th Cir. 2005)...................................... 42, 46, 47, 48
*Skinner v. Railway Executives' Association* 489
 U.S.60(1989)……………………………………... 15, 16,17,20,21,22, 31, 32
*Treleven v. U. of Minn.*, 73 F.3d 816 (8th Cir. 1996) ...............................................50
*United States v. Banks* 514 F.3d 769 (8[th]Cir. 2008)………………………………27
*United States v. Blue Bird*, 372 F.3d 989 (8th Cir.2004)........................................13
*United States v. Hall*, 269 F.3d 940 (8th Cir. 2001) ...............................................51
*United States v. Hughes,* 535 F.3d 880 (8th Cir. 2008)……………………………27
*United States v. Neset*, 235 F.3d 415 (8th Cir. 2000)……………………………...36
*Vernonia School District 47J v. Acton*,515U.S.646(1995) …………........... 16,17, 18
*Warren v. Board of Educ. of City of St. Louis*, 200 F.Supp.2d 1053 (E.D. Mo .
 2001)……………………………………………………………………………16

## Statutes

28 U.S.C. § 1291……………………………………………………………...1
28 U.S.C. §1331……………………………………………………………………1
28 U.S.C. § 1343……………………………………………………………………1
28 U.S.C. § 1391(b).………………………………………………………………1
28 U.S.C. § 2201……………………………………………………………...1
42 U.S.C. § 1983……………………………………………………………1, 50

R.S.Mo. Chapter 172……………………………………………………………...45
R.S.Mo. § 178.530 et seq……………………………………………………………44
R.S.Mo. § 178.631 et seq…………………………………………………43, 44, 45
R.S.Mo. §  et seq………………………………………………………………5

Appellate Case: 13-3264     Page: 7     Date Filed: 12/23/2013 Entry ID: 4108364

# JURISDICTIONAL STATEMENT

Appellees' claims in the District Court arose under 28 U.S.C. §§ 1331, 1343, 2201 and 42 U.S.C. § 1983 for the deprivation of Appellees' rights guaranteed under the United States Constitution pursuant to the Fourth and Fourteenth Amendments. The District Court had original jurisdiction of Appellees' cause of action pursuant to 28 U.S.C. § 1391(b). The District Court granted Appellees a Permanent Injunction on September 13, 2013, following a trial on the merits held on July 1, 2013. Defendants/Appellants filed their timely notice of appeal on October 9, 2013. This Court's jurisdiction is based on 28 U.S.C. § 1291, which provides for jurisdiction of appeals from final decisions of United States District Courts. This appeal is from an order for permanent injunction.

Appellate Case: 13-3264     Page: 8     Date Filed: 12/23/2013 Entry ID: 4108364

## STATEMENT OF ISSUES

1) The district court erred in entering a permanent injunction in that Plaintiffs failed to demonstrate their right to a permanent injunction based on the merits of their case, because the challenged policy is constitutional in all respects as to all persons and the district court's Judgment was based on erroneous finding of fact and erroneous application of fact, not based on any substantial or probative evidence.

Most apposite cases:

*National Treasury Employees v. Von Raab*, 489 U.S. 656, 665 (1989)

*New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985)

*Skinner v. Railway Executives' Association* 489 U.S. 602 (1989)

*Vernonia School District v. Acton*, 515 U.S. 646 (1995)


**2)** The district court erred in entering a permanent injunction in that educational purpose is a valid special need.

Most apposite cases:

*National Treasury Employees v. Von Raab*, 489 U.S. 656 (1989)

*New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985)

*Skinner v. Railway Executives' Association* (489 U.S. 602 (1989)

*Miller v. Wilkes*, 172 F.3d 574 (8th Cir. 1999)

Appellate Case: 13-3264    Page: 9    Date Filed: 12/23/2013 Entry ID: 4108364

**3)** The district court erred in entering a permanent injunction in that the remedy ordered is overbroad, is in excess of the relief Plaintiffs requested and is in violation of the Eleventh Amendment proscription against damages against a state institution.

Most apposite cases:

***Edelman v. Jordan*, 415 U.S. 651 (1974)**

***Miener v. State of Missouri*, 673 F.2d 969 (8th Cir. 1982)**

**4)** The district court erred in entering a permanent injunction based on an as-applied challenge in that the policy at issue has never fully been applied to any person.

Most apposite cases:

***Dolls, Inc. v. City of Coralville, IA*, 425 F.Supp.2d 958 (S.D. Ia. 2006)**

***United States v. Neset*, 235 F.3d 415 (8th Cir. 2000)**

Appellate Case: 13-3264     Page: 10     Date Filed: 12/23/2013 Entry ID: 4108364

## STATEMENT OF CASE

After lengthy consideration the Regents of Linn State Technical College of Missouri, the legal entity governing Missouri's state-wide technical college adopted a policy requiring new students on all campuses to participate in a drug screening program. Defendants' Exhibit DX 1, p. 008-012. Thereafter the President of the College issued procedures governing testing methods, allowing students to seek exclusion from the testing requirement and addressing other issues. DX 1, p. 000-001. Those procedures provided for an automatic and immediate stay of any adverse action against the student while the student's request for exclusion from the program was being decided. In addition, there is another, general complaint/grievance policy that could have allowed students to stop the process and petition to be relieved of the obligation to participate in the tests. T1 p. 129-130; T2 p. 84-88. No student made any complaint under that process either, although it was well-established at the time screening began, and students did and do use it. *Id*.

Collection of urine samples proceeded without objection from any student. A few students thereafter sued the President and the Regents in their official capacities seeking a declaration that the college's new drug screening program was facially unconstitutional under the Fourth and Fourteenth Amendments to the United States Constitution. (Transcript of Bench Trial) T2, p. 134-135.

Appellate Case: 13-3264   Page: 11   Date Filed: 12/23/2013 Entry ID: 4108364

Plaintiffs filed suit on September 14, 2011. The District Court granted Plaintiffs' Temporary Restraining Order on September 14, 2011. The Preliminary Injunction Hearing was held on October 25, 2011. The District Court granted the Preliminary Injunction on November 18, 2011. Defendants appealed. The preliminary injunction was vacated by the Eighth Circuit Court of Appeals on January 29, 2013. On remand the District Court granted another Preliminary Injunction, defendants did not appeal and the case proceeded to resolution on the merits. After initially declining to amend their Complaint, Plaintiff's filed a motion seeking leave to file a Second Amended Complaint on June 6, 2013. It was granted by the court the day it was filed. Among other changes, it asserted for the first time an as-applied challenge. Three and one-half weeks later, on July 1, the hearing on the final injunction commenced and concluded. Much of the evidence consisted of affidavits of Linn State instructors admitted without objection. Plaintiff called an expert witness and LSTC Dean of Students, Richard Pemberton. Defendants called Dean Pemberton and John A. Klebba, the President of the Board of Regents. Both witnesses testified that the college's motivation in adopting the drug screening program was two-fold, safety and Education. The District Court granted the permanent injunction on September 16, 2013. Defendants filed their timely Notice of Appeal on October 9, 2013.

Appellate Case: 13-3264    Page: 12    Date Filed: 12/23/2013 Entry ID: 4108364

Regents of Linn State Technical College of Missouri is the legal entity owning and controlling Linn State Technical College, Missouri's only statewide technical college. It is governed by a state-wide Board of Regents appointed by the Governor of the state of Missouri and confirmed by the senate. It is organized and governed pursuant to the provisions of §178.631, et seq. RSMo. and pursuant thereto is empowered to adopt such rules and regulations as are necessary for its governance and the accomplishment of its mission. Such policies are adopted pursuant to public notice and comment as prescribed by the provisions of Missouri's open meetings law § 610.010, et seq. RSMo. 2000 and other applicable law. (T2 p. 127:22 – 128:1). In July 2014 LSTC will be re-named the State Technical College of Missouri to better reflect its unique, state-wide mission: to prepare students for profitable employment and a life of learning.

In the early summer of 2011 the Board of Regents adopted a drug screening policy. Specifics of that policy and preexisting policies regarding drug testing appear in the Addendum to this brief. Essentially all new students are screened via a urine sample provided in complete privacy. The program is not punitive and allows students to petition to be excused from testing. DX 1, p. 000-12. Enrollment in the College is voluntary. (Transcript 127:22 – 128:1). The majority of programs offered at Linn State Technical College require students to work with extraordinarily dangerous components. (Transcript 44:20 -25; 53:19 – 55:3; 65:5 –

Appellate Case: 13-3264   Page: 13   Date Filed: 12/23/2013 Entry ID: 4108364

16; 80:4-12; 81:2-6; 87:3-20; 95:1–97:12; 102:21 –103:15; 107: 2 –10. Tr. 2, p. 130:17-133:15.  Defendant's Exhibits 2, 34-41, 44-49).

Linn State Technical College has a high number of students who are at risk for drug use who attend the institution.  (Transcript 115:2 – 16).  Linn State Technical College Students who are enrolled in the Commercial Driver's License and Heavy Equipment Operations programs are required to be drug tested by federal regulation.  (Transcript 117:10-15).

On September 6, 2011, the President of the College formally issued procedures governing the implementation of the drug screening program adopted by the Board of Regents earlier that year.  Under these procedures, a student who wished to be excused from participating in the College's drug screening program would petition the President, provide the relevant information and at the conclusion of the process the President would then issue a decision.  (T1 p. 36:17 – 37:9).  Plaintiffs participated in the drug screening sample collection process without objection but shortly thereafter filed suit seeking injunctive relief barring the College from further implementation of the drug screening program and seeking a declaration that the college's policies were facially unconstitutional as a violation of the Fourth and Fourteenth Amendments of the Constitution of the United States of America.  The District Court entered a Temporary Restraining Order and a Preliminary Injunction.  This court sustained defendants' *interlocutory*

Appellate Case: 13-3264     Page: 14     Date Filed: 12/23/2013 Entry ID: 4108364

appeal, vacated the preliminary injunction and remanded the case. A trial on the merits began on July 1, 2013. The District Court granted Plaintiffs a permanent injunction on September 16, 2013. This timely appeal followed.

The primary motivations of Linn State Technical College in implementing a drug screening program were the "special needs" of safety and educational purpose. (Tr. 2, p. 127:13-135:8 and p. 127:13-132:12.) See "Agenda Item Summary" in the Addendum to this brief. Linn State Technical College students learn and work in, on and around motor vehicles, heavy equipment, nuclear technology, dangerous chemicals, poisonous and explosive gases, searing heat, crushing pressures and an active airport. . (Transcript 44:20 -25; 53:19 – 55:3; 65:5 –16; 80:4-12; 81:2-6; 87:3-20; 95:1–97:12; 102:21 –103:15; 107: 2 –10. Tr. 2, p. 130:17-133:15. Defendant's Exhibits 2, 34-41, 44-49).

Appellate Case: 13-3264    Page: 15    Date Filed: 12/23/2013 Entry ID: 4108364

# SUMMARY OF ARGUMENT

**1) The district court erred in entering a permanent injunction in that Plaintiffs failed to demonstrate their right to a permanent injunction based on the merits of their case, because the challenged policy is constitutional in all respects as to all persons and the district court's Judgment was based on erroneous finding of fact and erroneous application of fact, not based on any substantial or probative evidence.**

The District Court erred in finding that Appellees had satisfied all elements necessary for the granting of this permanent injunction. Appellees should not have succeeded on the merits, there was no irreparable harm shown, the balance of harms favors LSTC, and the public interest is in favor of the drug testing.

Further, the District Court erred in failing to adequately consider several important factors in its consideration of the evidence: in finding the procedural protections and right to petition for exclusion were not relevant and when taken with the evidence as a whole did not satisfy the requirements of the Fourth Amendment; in finding the safety risk to the individual student was not a factor to be considered in determining whether a sufficient safety threat existed to justify the testing policy; in finding, without explanation, that the testing policy did not apply to or was unconstitutional as applied to various programs which allegedly had separate testing requirements or were tested because of internship or work-place requirements; and in including and emphasizing the effect of faculty supervision and other college-specific factors in evaluating the safety of the programs at LSTC.

9

The District Court's findings that the programs included in the permanent injunction did not pose sufficient safety risks to satisfy the requirements of the Fourth Amendment were contrary to the undisputed evidence and unsupported by the evidence on the whole record. It erred in finding the plaintiffs met their evidentiary burdens and their ultimate burden of proof. The District Court erred in finding that defendants had not met the burden of going forward with evidence sufficient to eliminate any presumption afforded to plaintiffs under the evidentiary burden-shifting procedure employed by the District Court. The District Court erred in finding drug testing was not common or the norm in the various industries testified about by the classroom instructors and other college officials; in excluding evidence of the prevalence of drug testing in the auto shop industry offered by instructor Brandon and others because it was based on hearsay; in determining defendants did not offer evidence on programs offered by LSTC; in finding that all but the identified programs did not pose sufficient safety concerns to justify testing; in requiring defendants to provide evidence on a program-by- program basis to justify testing in each specific program; in finding the cross-enrollment of students in classes outside their programs was not relevant and when taken with the evidence as a whole, did not satisfy the requirements of the Fourth Amendment.

**2) The district court erred in entering a permanent injunction in that educational purpose is a valid special need.**

10

The District Court erred in failing to consider whether, and determining no educational interest sufficient to overcome the requirements of the Fourth Amendment existed and justify the testing policy. Safety is not the only valid special need, and the District Court failed to properly consider educational purpose.

**3) The district court erred in entering a permanent injunction based on an as-applied challenge in that the policy at issue has never fully been applied to any person.**

The as-applied challenge under the Fourth Amendment to Defendants' drug testing policy was not ripe for judicial determination, because the full policy has never been allowed to be applied to any person. The District Court abused its discretion in entering a permanent injunction on the terms entered without deference to the state officials vested with power and authority to adopt, apply and initially determine issues related to the enforcement and granting of exceptions and modifications to the policy in the orderly application of the policy without federal intervention prior to the issues being presented and decided by the relevant state officials. The District Court erred in determining the protections provided by the president's procedures implementing the Board policy were constitutionally irrelevant or not sufficient when applied along with the Board policy to satisfy the requirements of the Fourth Amendment, and in determining plaintiffs were not

Appellate Case: 13-3264    Page: 18    Date Filed: 12/23/2013 Entry ID: 4108364

required to exhaust their administrative remedies or follow the procedures provided by the college before filing suit in Court.

**4) The district court erred in entering a permanent injunction in that the remedy ordered is overbroad, is in excess of the relief Plaintiffs requested and is in violation of the Eleventh Amendment proscription against damages against a state institution.**

The District Court erred in granting an injunction that applied to so many of LSTC's programs. It acted without or in excess of its jurisdiction and in violation of the principles of comity in entering an injunction requiring Linn State Technical College to give retrospective monetary relief and in failing to state the recipients and terms with sufficient clarity. The District Court also erred in holding certain arguments and affirmative defenses, including those under the Eleventh Amendment, were abandoned or waived by defendants.

The Permanent Injunction grants relief in excess of and inconsistent with the issues raised and relief requested in the Second Amended Complaint, and that relief is in violation of the Eleventh Amendment. Plaintiffs asked for a "credit" back to students of the $50 cost of testing, and the Court ordered retrospective monetary payments directly to students, in violation of the Eleventh Amendment proscription against damages and all retrospective relief against state entities.

## <u>STANDARD OF REVIEW</u>

The standard of review for the issuance of a permanent injunction is as follows: "We review the grant or denial of a permanent injunction for abuse of discretion." *Capitol Records, Inc. v. Thomas-Rasset*, 692 F.3d 899, 906 (8th Cir. 2012); citing *Fogie v. THORN Americas, Inc.,* 95 F.3d 645, 649 (8th Cir. 1996). "An abuse of discretion occurs if the district court reaches its conclusion by applying erroneous legal principles or relying on clearly erroneous factual findings." *Id*. Further, where "the determinative question is purely legal, our review is more accurately characterized as de novo. *Qwest Corp. v. Scott*, 380 F.3d 367, 370 (8th Cir. 2004) citing *United States v. Blue Bird*, 372 F.3d 989, 991 (8th Cir.2004). The above standard applied to all issues discussed here.

Appellate Case: 13-3264     Page: 20     Date Filed: 12/23/2013 Entry ID: 4108364

# ARGUMENT

**I.    The district court erred in entering a permanent injunction in that Plaintiffs failed to demonstrate their right to a permanent injunction based on the merits of their case, because the challenged policy is constitutional in all respects as to all persons and the district court's Judgment was based on erroneous finding of fact and erroneous application of fact, not based on any substantial or probative evidence.**

The District Court erred in finding all elements satisfied for a permanent injunction.  These include 1) actual success on the merits; 2) that Plaintiffs face irreparable harm; and 3) that the harm outweighs any possible harm to others; and 4)that an injunction serves the public interest. *Community of Christ Copyright Corporation v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005 (8th Cir. 2011). In its analysis of the issue, the District Court misunderstood the evidence and case law involved, inappropriately narrowed the special need, and failed to consider several important factors in order to find that as few as possible students could constitutionally be drug tested.

The district court abused its discretion and erred in entering a permanent injunction in that it made and relied on clearly erroneous factual findings based on the absence of evidence erroneously excluded from the record or based on speculation and conjecture rather than competent, probative and admissible evidence and which were contrary to the undisputed evidence in the record.

**A.    *Success on the Merits—LSTC has a valid "special need" for drug testing***

14

The drug screening program LSTC has implemented falls squarely within the realm of constitutional action, because there is indeed a "special need" such as those discussed in *Skinner v. Railway Executives' Association* (489 U.S. 602 (1989)), and other U.S. Supreme Court cases.[1] The Eighth Circuit, in the previous appeal in this case, held that Linn State had shown a valid special need in ensuring safety. *Barrett v. Claycomb*, 705 F.3d 315, 322 (8th Cir. 2013).

In U.S. Supreme Court and Eighth Circuit jurisprudence, there is *no* precedent that indicates a public college may not screen its applicants for illegal drugs when there is a special need to do so. "The fundamental command of the Fourth Amendment is that searches and seizures be reasonable." *New Jersey v. T.L.O.*, 469 U.S. 325, 340 (1985). The Supreme Court has made it clear that there is a "longstanding principle that neither a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance." *National Treasury Employees v. Von Raab*, 489 U.S. 656, 665 (1989). The permissibility of a particular practice "is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Skinner v. Railway Executives' Association*, 489 U.S. 602, 619 (1989) (citations omitted).

---

[1] *Skinner* at 619, *citing Griffin v. Wisconsin,* 483 U.S. 868, 873 (1987) and *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985).

Appellate Case: 13-3264    Page: 22    Date Filed: 12/23/2013 Entry ID: 4108364

Government entities are allowed to forego individualized suspicion where "special needs, beyond the normal needs of law enforcement" make normal Fourth Amendment requirements impracticable and can be shown to outweigh the privacy interest involved. *Skinner* at 619. *See also Von Raab* at 665; *T.L.O* at 351 (Justice Blackmun's concurrence). The Court in *Skinner* (which dealt with railroad employees) noted that "[e]mployees subject to the tests discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." *Id.* at 628.

Special needs have been found for many occupations and pursuits, including commercial motor vehicle operators ( *see e.g*. *Intl. Broth. of Teamsters, Chauffeurs, Western Conference of Teamsters v. Dept. of Transportation*, 932 F2d 1292 (9th Cir. 1991)), customs officials (*Von Raab*), public elementary and secondary teachers (*Knox County Ed. Assn. v. Knox County Bd. of Ed*., 158 F.3d 361 (6th Cir. 1998), cited favorably by *Warren v. Board of Educ. of City of St. Louis*, 200 F.Supp.2d 1053, 1064 (E.D.Mo.2001)), and participants in competitive high school extracurricular activities (*Board of Ed. of Independent School District No. 92 of Pottawatomie County, et al. v. Earls*, 536 U.S. 822 (2002); *Vernonia School District 47J v. Acton*, 515 U.S. 646 (1995).

This Court's opinion in *Barrett v Claycomb*, 705 F.3d 315, 322 (8th Cir. 2013) confirmed that LSTC does have a special need in that "the public has a valid

16

interest in deterring drug use among students engaged in programs posing significant safety risks to others." The same opinion also confirmed that the drug testing program has nothing to do with law enforcement. *Id*.

Once a special need is identified, the inquiry moves into balancing "the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." *Von Raab* at 665-666. This analysis involves three factors: (1) "the nature of the privacy interests allegedly compromised by the drug testing"; (2) the character of the intrusion imposed by the Policy"; and (3) the nature and immediacy of the government's concerns and the efficacy of the Policy in meeting them." *Barrett* at 322; quoting *Bd. of Educ. of Indep. Sch. Dist. No. 92 of Pottawatomie Cnty. v. Earls*, 536 U.S. 822, 830, 832, 834 (2002).

## 1.    The Factors

### i.    *The Nature of the Privacy Interest*

LSTC is not an ordinary college. It is an institution where students learn tasks such as driving heavy equipment and fixing Caterpillar engines. The Supreme Court has found that persons working in industries heavily regulated for safety have lower expectations of privacy than persons in other fields (*Skinner* at 627), and that even high school students performing extracurricular activities are analogous to such persons. *Vernonia* at 657; *Earls* at 832. At LSTC, most of the

Appellate Case: 13-3264    Page: 24    Date Filed: 12/23/2013 Entry ID: 4108364

students will be voluntarily entering such heavily regulated industries, or at least industries that require drug testing. *See e.g. Trial Transcript* (T2) p. 46-47, 56-57, 66, 82-83, 90, 104, 108-109. Many are already required to pass drug tests to participate in internships and practicums. *See e.g*. T2 p. 7, 98-99, 45, 56, 88. All are required to have immunizations and a physical to be admitted to LSTC.[2] Considering the risk of bodily injury and death involved at LSTC, and that the vast majority of these students are preparing to work in heavily regulated industries, LSTC students already have a somewhat lowered expectation of privacy, and the balance here should favor the safety of those involved. The Eighth Circuit has previously agreed with Appellants on this point. *Barrett v. Claycomb*, 705 F.3d 315, 322 (8th Cir 2013).

The lower court, however, refused to find a lower expectation of privacy for the vast majority of LSTC students. *Appellants' Appendix* (AA) p. 281. It found that, based on the Eighth Circuit's earlier findings, *only* those programs for which specific evidence and expert testimony was presented at trial showing that industry testing was the norm or that the industry involved was heavily regulated would be considered to have a diminished expectation of privacy for their students, and that otherwise, the Court would consider the students' privacy interests to be the same as all adults. AA p. 282.

---

[2] *See Vernonia* at 656.

Appellate Case: 13-3264    Page: 25    Date Filed: 12/23/2013 Entry ID: 4108364

This approach fails to take into account the general nature of the institution. The students at Linn State are somewhere in between the high school students in *Vernonia* and the adult workers in the various cases discussing safety-sensitive occupations. They are *students*, many of whom are performing dangerous work for the first time. This requires a heightened level of supervision and a somewhat lowered expectation of privacy.

## ii.    *The Intrusiveness of the Program*

As far as the intrusiveness of the testing program, the District Court does not generally dispute the Eighth Circuit's prior finding that the testing procedures are "relatively noninvasive."  AA p. 285, *Barrett* at 323. However, the District Court goes on to heighten the nature of the intrusion anyway in its balancing analysis, without authority, based on the bare possibility of parental notification, even though "the trial record is not clear as to whether Defendants would actually notify parents of positive results." AA p. 286.  If the parental notification possibility was such a concern, in crafting an injunction, it would have been simple to enjoin parental notification. Instead, as with the rest of the Order, the District Court chose to throw out the baby with the bathwater.  Appellants note that the parental notification option was public on the college website, and that up until the present suit, not one student or parent complained about the drug testing program at issue. *Transcript Prelim. Inj. Hearing* (T1) at p. 129-130; *Trial Transcript* (T2) at p. 84-

Appellate Case: 13-3264      Page: 26      Date Filed: 12/23/2013 Entry ID: 4108364

88, 134. Further, there has been no evidence presented that any parent would have actually been notified. There was also testimony that any parental notification, if it occurred, would follow FERPA regulations. T1 at p. 25. The full policy was never allowed to work, therefore this and many other issues remain speculative. The testing process remains relatively noninvasive.

### iii.     The Nature and Immediacy of the Government Interest

The nature of the governmental interest here is twofold: 1) the safety of the students and everyone around them and 2) the educational purpose in training students, most of whom will enter fields where drug testing is the norm, that being drug-free is part of employment in such fields (this purpose will be discussed in Point II, below.) The Defendants' main goal in screening students for illegal drugs is, of course, the safety of everyone at the College.  This is a campus where the vast majority of the courses involve working with heavy machinery, high voltage, caustic chemicals, nuclear power and other dangerous instrumentalities and substances. Students impaired by drugs in such situations have the potential to wreak havoc on themselves, their classmates, their instructors, and possibly even the whole community.

The District Court, relying solely on cases from other circuits' interpretations of *Skinner* and *Von Raab*, formulated a new test for appropriate safety risks for drug testing, and ignored all other possible interpretations of special

Appellate Case: 13-3264     Page: 27     Date Filed: 12/23/2013 Entry ID: 4108364

needs. The District Court states, without clear authority, that there are three components to the special need of safety: 1) based on *Skinner* at 628, "activities performed by students at Linn State **must** pose such a threat that 'even a momentary lapse of attention can have disastrous consequences'"(AA p. 277); 2) based on *Von Raab* at 674, that the "safety risks at issue must be of a unique or unusual degree" (*Id.*); and 3) based on this Court's opinion in *Barrett* at 322, that "the safety risk must be to others, as opposed to the individual student performing the task." *Id.* None of these propositions in the Supreme Court cases cited are stated as "musts" or absolutes. In *Skinner*, the Supreme Court did not state that such a drastic threat *must* be found in order to constitutionally test, only that in that case it was obvious that such a threat existed. *Skinner* at 628. In *Von Raab*, again, "unique" safety concerns were not a requirement, but a factor the Supreme Court took into consideration. *Von Raab* at 674. In that case, testing individuals susceptible to "bribery and blackmail" was approved, even where they were not carrying firearms. *Id.* Here, the "unique" safety concern is inexperienced students learning dangerous professions, as opposed to experienced workers performing the same tasks. Similarly, this Court in *Barrett* (at 322), by quoting *Skinner*, did not foreclose the important issue of the students' own safety. The *Von Raab* Court (at 679) did discuss the dangerous nature of Customs Service employees' positions as regarded individual personal safety. Appellants maintain that Linn State students

21

impaired by or using drugs pose a serious safety concern to everyone around them, but on top of that, surely the personal safety of the students themselves is no less important than the safety of "others."

It is true that the Appellants have not claimed to have a drug problem that is worse than any other college in the country. The District Court discussed at length that Appellants had failed to show a specific drug problem on LSTC's campus. AA p. 273, 286-287. This is not necessary under the applicable precedents. The Supreme Court has repeatedly stated that such a showing is unnecessary in certain situations. "...[D]rug abuse is one of the most serious problems confronting our society today. There is little reason to believe that American workplaces are immune from this pervasive social problem, as is amply illustrated by our decision in *Railway Labor Executives*." *Von Raab* at 674. <u>See also</u> *Barrett* at 323; *Miller v. Wilkes*, 172 F.3d 574, 581(8th Cir. 1999) (taking judicial notice of the serious problem of drug and alcohol abuse in public schools). In *Von Raab*, the government showed no heightened drug problem among the covered employees. However, the stakes were seen as high enough to allow the drug testing anyway. *Id*. at 677. At LSTC, the stakes are much higher than in the average workplace or college environment. Because the students are inexperienced and routinely perform tasks fraught with risk, even drug use at the same level as everywhere else is a dangerous problem.

Appellate Case: 13-3264    Page: 29    Date Filed: 12/23/2013 Entry ID: 4108364

### iv.    *The Efficacy of the Program*

Regarding efficacy of the testing, Appellees argued vehemently that LSTC's drug screening program will not catch all drug users and is thus ineffective and has no value. The not-thorough-enough argument was rejected in *Von Raab*: "Thus, under petitioners' view, 'the testing program would be more likely to be constitutional if it were more pervasive and more invasive of privacy.'" *Von Raab* at 676 fn4 (citing the 5th Circuit opinion in the same case). Here, the lower Court agreed with the Eighth Circuit's earlier opinion in *Barrett* that the argument that the tests were ineffective was unpersuasive, and Appellees' own expert testified that drug testing such as LSTC proposed would detect some individuals using drugs. AA p. 288.

Not only did the Court below essentially dismiss (in the face of substantial evidence) the idea that LSTC was a more dangerous place than other campuses, comparing the level of danger at various times to ordinary driving of a car and a home garage (AA p. 277-78; 291) the Court below also challenged the credibility of Defendants' statements that safety was primary motivation behind the school's entire drug-testing program and opined that any safety concerns were likely to be "illusory." AA p.280. However, the Court below still found some of the programs' students could be constitutionally drug tested and that some of the programs, such as Heavy Equipment Operations, which could not be constitutionally tested under

Appellate Case: 13-3264    Page: 30    Date Filed: 12/23/2013 Entry ID: 4108364

LSTC's policy could be constitutionally tested under outside policies furthering the same goals. AA p. 289. This logic is internally inconsistent, and the Court below cited no authority for the proposition that additional reasons for testing some students somehow diminished the overall goal of increasing safety and diminished the special need. Further, the Eighth Circuit was satisfied, based on largely the same record, "that safety was a primary consideration" in LSTC's construction of its drug testing program. *Barrett v. Claycomb* at 322.

## 2. *Other Considerations*

The District Court abused its discretion and erred in finding facts without support in the record and ignoring other factually undisputed important considerations in LSTC's specific situation, and erred in entering an injunction which was overbroad and indefinite.

The District Court erred in determining the testing policy did not apply to various programs which allegedly had separate testing requirements or were tested because of internship or workplace requirements. For example, anyone seeking a Commercial Driver's License (CDL) must undergo federally-mandated drug testing. Although the Eighth Circuit had already found that the Heavy Equipment Operations program students could be constitutionally drug-tested under LSTC's program (*Barrett* at 322), the District Court found, without authority, precedent, or evidentiary support, that they were not and could not be tested under the

24

challenged policy because they could be constitutionally tested under a different policy. LSTC's policy is intended to apply to *all* students, not just the ones enrolled in programs tested under other policies, statutes, or internship requirements. The fact that such students can be constitutionally tested under other policies does not make it unconstitutional to test them under the one at issue.

The District Court also erred in finding the cross-enrollment of students in classes outside their programs was not relevant, and when taken with the evidence as a whole, did not satisfy the requirements of the Fourth Amendment. The District Court acknowledged that evidence was presented that students in less safety-sensitive programs can and do enroll in classes outside their own programs. AA p. 50-52; *see also Transcript Prelim. Inj. Hearing* (T1) p. 45, 65-66, 88, 97, 103, 108. However, the Court dismissed this evidence completely as not being specific enough, and stated that the possibility was "entirely speculative" (AA p. 316) and the argument was but an "unsubstantiated apprehension." AA p. 317. The lower Court cited to *Chandler v. Miller*, 520 U.S. 305, 323 (1997) to say that the search is unreasonable if based on hypothetical dangers. However, that case is inapposite, because in *Chandler*, where the State of Georgia wanted to drug test all candidates for public office, even the state did not argue that there was any physical danger involved. Here, there is definite physical danger involved, and surely the school is

in a position to know whether cross-enrollment actually happens, without having to present student-specific occasions of it.

The District Court erred in including the effect of faculty supervision in evaluating the safety of the programs at LSTC. In another example of flawed logic, the District Court made much of the sufficiency of the protection provided by close faculty supervision (by instructors who are not experts in identifying drug abuse), but also chided the school for failing to include those faculty members in the drug screening program. AA p. 292-294; 297; 274. Thus, the District Court found the instructors trustworthy enough to be given the responsibility to detect drug use in the students, but not trustworthy enough to *not* be drug tested themselves. The single case[3] on which the District Court relies for the proposition that supervision negates the need for testing is inapposite for several reasons, besides being non-controlling in this Circuit: it dealt only with tests for marijuana (*Burka* at 817); and dealt with experienced adult workers (*Id*.), not students; dealt only with the standard of reasonableness for for-cause testing (*Id*. at 832); and employees were not necessarily informed of the testing program (*Id*. at 830).

The District Court erred in finding drug testing was not common or the norm in the various industries testified about by the classroom instructors and other college officials. The District Court ruled inadmissible testimony by Auto Body and

---

[3] *Burka v. New York City Transit Authority*, 739 F.Supp. 814 (S.D.N.Y. 1990).

26

Mechanics instructor Jimmy Brandon, Dr. Pemberton and others because it was based on hearsay. Such evidence was admissible under the *Residual Hearsay Exception* of the Federal Rules of Evidence 701. *U.S. v. Hughes*, 535 F.3d 880 (8th Cir. 2008) and *U.S. v. Banks*, 514 F.3d 769 (8th Cir. 2008). The testimony of these witnesses was based on the witness' perception of the matter at issue and their specialized knowledge within the scope of their chosen professional field, and was helpful to clearly understand the witness's testimony and determine a fact in issue and not based on scientific or technical expertise.

The District Court erred in requiring Appellants to provide evidence on a program-by- program basis to justify testing in each specific program. This method of analysis is based on *Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 866 (11th Cir. 2013). The court in that case interpreted the U. S. Supreme Court's comment in *Chandler v. Miller*, 520 U.S. 305, 314 (1997) that "courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties" as directing them to use a job category-by-job category analysis of the situation at hand. *Id*. The Eleventh Circuit examined a Florida state policy to perform mandatory, suspicion-less drug testing on all new hires in all state agencies (85,000 employees). *Id*. at 857. The district court had enjoined all testing. *Id*. The appellate panel found the relief was overbroad, and turned to a discussion of various employment categories

27

to examine special need. Id. at 867. Like Georgia in *Chandler*, the State in *Scott* had articulated no particular safety need and instead claimed it could constitutionally test all state employees regardless of position. *Id.* at 873. The injunction was vacated and the case remanded.

This case is inapposite to *Scott*, in that this groups of students is much smaller and more homogeneous than the tens of thousands of state employees in Scott, the entire school is peppered with dangerous instrumentalities, and the general purpose of the school is to prepare students for jobs which, for the most part, will involve some physical danger (and drug testing). There is no case on point in the Eighth Circuit and Eleventh Circuit case law is not binding in this circuit.

Overall, The District Court's findings that the programs included in the permanent injunction did not pose sufficient safety risks to satisfy the requirements of the Fourth Amendment were contrary to the undisputed evidence and unsupported by the evidence on the whole record.

## B.  *No Irreparable Harm Has Been Shown*

The District Court erred finding the procedural protections and right to petition for exclusion was not relevant and when taken with the evidence as a whole, did not satisfy the requirements of the Fourth Amendment. The Court below erred in finding irreparable harm in that it has completely failed to account for the fact that administrative procedures are in place such that students who disagree with the

Appellate Case: 13-3264    Page: 35    Date Filed: 12/23/2013 Entry ID: 4108364

screening or its results may petition the President of the College to either be exempted from the program entirely and/or to have any adverse action against them stayed until all appeals are complete. Not one student has petitioned or complained to the College. The District Court simply presumed the President and Board would act unlawfully if petitioned, and no one has even attempted to go through the procedures. Further, as explained below in Section III, there is another, general complaint/grievance policy that could have allowed students to stop the process and petition to be relieved of the obligation to do the tests. T1 p. 129-130; T2 p. 84-88. No student made any complaint under that process either, although it was well-established at the time screening began, and students did and do use it. *Id*.

While Appellants agree that the violation of some constitutional rights is a *per se* irreparable harm under the law, the fact that Plaintiffs merely allege such a violation is not enough in itself to warrant the issuance of a permanent injunction. Were that so, any allegation of a constitutional violation would result in an injunction. Here, if a student petitions to be released from the drug testing requirement no testing is done until all appeals and procedures are finished. Therefore there is no *per se* harm.

**C.     *Balance of harms—Appellees' Alleged Harm Does Not Outweigh Potential Harm to Others and Themselves***

Appellate Case: 13-3264     Page: 36     Date Filed: 12/23/2013 Entry ID: 4108364

The risk to the current and potential Plaintiffs is minimal. All of them can petition to be released from the screening program and have any action stayed until all appeals and litigation are over. Even if they do not petition, the risk is only that they would get the results of their drug tests. If they are found positive, they can still proceed through the appeal or exemption process. On the other hand, the longer LSTC waits to resume the screening program, the greater the statistical likelihood that a serious or deadly accident will occur.

## D. The Public Interest Favors Safety and a Reduction in Drug Use

The Board of Regents Appellants are appointed to serve the public interest, and they elect the President. All of the Appellants have the students' interests as a priority. The public interest is served in several ways by LSTC's drug screening program that together outweigh the privacy interests of the Appellees. First and foremost is the safety issue. It is definitely in the public interest that students, faculty and staff at LSTC not be maimed or killed. This Court previously agreed with Appellants that LSTC and the people of Missouri should not have to wait for a deadly accident to occur before implementing preventive measures. The second purpose for the drug screening program is educational, to prepare the students for the realities of the workplace. This purpose is discussed further in Section II, below.

Appellate Case: 13-3264     Page: 37     Date Filed: 12/23/2013 Entry ID: 4108364

In sum, in failing to properly consider and weigh all these factors, the District Court abused its discretion in entering the permanent injunction.

## II.   The District Court Erred In Entering A Permanent Injunction In That Educational Purpose Is A Valid Special Need.

The District Court erred in failing to consider whether, and determining that there was no educational interest sufficient to overcome the requirements of the Fourth Amendment which existed to justify the testing policy. The District Court dismissed the idea of an educational purpose being a valid special need by simply stating that it did "not provide a recognized justification for overriding the constitutional protections of the Fourth Amendment," without further analysis. AA p. 281.  It is true that Linn State is the first post-secondary institution, to Appellant's knowledge, to have advanced such a rationale in this manner, and that there has been as yet no case specifically discussing the subject. But the rationale here is not essentially different from other rationales that have previously been advanced and upheld. The Supreme Court has stated that it "has not hesitated" to undergo the balancing assessment in the face of various special needs. *Skinner* at 619.

Safety is not the only valid special need, beyond the normal need for law enforcement, that has been found by the Supreme Court. Cases dealing with other

Appellate Case: 13-3264     Page: 38     Date Filed: 12/23/2013 Entry ID: 4108364

special needs, cited in *Skinner*, include *New York v. Burger*, 482 U.S. 691, 699-703 (1987)(search of premises of certain highly regulated businesses); *O'Connor v. Ortega*, 480 U.S. 709, 721-725 (1987)(work-related searches of government employees' desks and offices) and *New Jersey v. T.L.O*., 469 U.S. 325, 337-342 (search of student's property by high school officials). None of the above dealt with safety issues. All of the school cases are built on a foundation that schools, by their very essence, serve a special governmental purpose and present special needs.

Several other cases have dealt with drug testing in an educational setting. (*See Vernonia*, *Earls* and *Miller v. Wilkes*, 172 F.3d 574 (8th Cir. 1999). These involved high schools. In every decision, drug testing of students involved in voluntary, extracurricular activities was upheld. These also did not deal with safety issues, other than the overarching improvement in safety that a reduction in drug use affords.

*Miller* (like *Vernonia* and *Earls*) upheld random, suspicion-less drug searches of high school students pursuing extracurricular activities. The *Miller* court took judicial notice that there is a drug problem in schools, and saw "no reason that a school district should be compelled to wait until there is a demonstrable problem" before taking preventative action. *Miller* at 581. The court found it sufficient that "the possible harm against which the [School District] seeks to guard is substantial" *Id*., *quoting Von Raab* at 674-675. As noted in *T.L.O*. at

Appellate Case: 13-3264     Page: 39     Date Filed: 12/23/2013 Entry ID: 4108364

749, educators who have to spend time wondering about probable cause are "diverted from the essential task of education."

Linn State not only has a special need as it regards safety, particularly of those students enrolled in safety-sensitive classes, it also has another special need which permeates the entire school: the educational purpose served by fostering a drug-free environment at a technical school. The testing is meant to not only improve safety, but also to prepare the students for the realities of the workplace. There is a high likelihood graduates will be tested before they can land and keep good jobs in these industries. Why bother to give people degrees if they can never get jobs in the real world, only because they cannot pass a drug test? That would waste both the students' and the taxpayers' money. Unemployment is a serious issue for young and old workers; this testing program is a tool that gives graduates an edge when entering the workforce. For the vast majority of the students, the privacy they would yield to the school is much less than they will give up in order to be employed in the occupations they are learning to perform.

Further, the program serves the same educational interest upheld in *Miller*: encouraging a drug-free learning environment. It also helps instructors focus their time on instructing, instead of having only themselves to rely on in trying to discern whether or not students have issues with drugs.

Appellate Case: 13-3264    Page: 40    Date Filed: 12/23/2013 Entry ID: 4108364

Attendance at Linn State Technical College is voluntary. Nobody goes to Linn State to get a liberal arts education; it is a technical college, with a vastly different environment than any campus of the University of Missouri System or any other public institution of higher learning that is not a technical school. The choice to attend Linn State represents a decision that the burdens, both monetary and otherwise, of pursuing an education at that particular institution are outweighed by the benefits of successful completion of the courses and programs offered.  Opting to attend Linn State necessarily means opting out of some rights and into some limitations in deference to the choices made for the students by the college in the application of the combined knowledge, experience, and expertise of the college's faculty and officials in developing and implementing the courses of study and other requirements which work together to produce the unique blend of knowledge and skills that comprise a graduate of Linn State Technical College.

Students are not compelled to choose Linn State; however, if they choose to benefit from its experience and expertise they must attend class, meet deadlines and do things they may not always believe are necessary.  It is a package deal.  As long as the relevant costs and benefits are reasonable under the law, students take the good with the bad, whether or not they agree with every choice made by the college. The drug screening challenged by Appellees is only one component of a comprehensive educational and developmental program used by the college which

Appellate Case: 13-3264     Page: 41     Date Filed: 12/23/2013 Entry ID: 4108364

is designed to assist students in identifying and eliminating social and physical

challenges to their ability to learn and work successfully (for example, the college

also gives grades for attendance). The educational special need should have been,

and was not, considered by the District Court in its analysis of the drug testing

program.

### III. The District Court Erred In Entering A Permanent Injunction Based On An As-Applied Challenge In That The Policy At Issue Has Never Fully Been Applied To Any Person.

At the outset, Appellants disagree that the Second Amended Complaint

presents a valid as-applied challenge. The only notable change from the First

Amended Complaint to the Second is the addition of the words "as applied" in the

prayer clause. AA p. 63, 180.  Appellees moved to file their Second Amended

Complaint on June 6, 2013, and the motion was granted the same day, without

opportunity for response in opposition by Appellants. AA p. 15-16. The substance

of the two complaints is exactly the same. Likely the original pursuit of a facial

challenge was a tactical decision designed to avoid the exhaustion of the various

administrative remedies provided by the College which would have been

necessary, and even potentially jurisdictional, had Appellees brought an "as

applied" challenge. This Court in *Barrett* has already discussed that the First

Amended Complaint did not state an as-applied challenge (at 324-325), although

the District Court states that an as-applied challenge should have been construed all along. AA p. 323-24.

Whether or not the mere addition of the words "as applied" is found sufficient, finding that the policy was unconstitutional as applied to named Appellees or others is still error. The matter was not ripe for judicial determination, and Plaintiffs had no standing to challenge the policy, because the complete policy, which included two separate avenues by which students could opt out of drug screening, has never been *applied* to any Plaintiff or to anyone else. "Typically, and not surprisingly, regulations must actually be applied before a plaintiff can challenge them on an as-applied basis." *Dolls, Inc. v. City of Coralville, IA*, 425 F.Supp.2d 958, 972 (S.D. Ia. 2006) *citing United States v. Neset*, 235 F.3d 415, 420 n.3 (8th Cir. 2000). It has certainly not been applied to members of the certified class who are unknown, future students. It is significant to note that the very same relief sought in the District Court was available under the College's own policies. The District Court chose to dismiss the entire petition process as unconstitutional.

The District Court erred in determining the protections provided by the president's procedures implementing the Board policy were constitutionally irrelevant or were not sufficient, when applied along with the Board policy, to satisfy the requirements of the Fourth Amendment, and in determining Appellees were not required to exhaust their administrative remedies or follow the procedures

provided by the college before filing suit in Court. The method chosen by Linn State Technical College to resolve the question of whether the circumstances of a particular student at Linn State Technical College satisfies the special need test of the Fourth Amendment is the adoption of a general policy which presumes, based on the huge percentage of students involved in safety-sensitive courses, that all students, absent information to the contrary, will be involved in safety-sensitive programs, classes, and activities and thus may legally be required to participate in drug testing. No students, prior to this litigation, objected or filed a grievance. Further, no student has had any adverse consequences from the drug screening and Plaintiffs have presented no evidence that it is a certainty that anyone will suffer any consequences.

Acknowledging the possibility that a few students may not participate in safety sensitive programs, classes and activities, the college adopted a procedure allowing students who object to participating to request exclusion from drug testing by providing their specific information to the president of the college and requesting to be released from the  requirement to participate in the drug test because they are not involved in safety-sensitive classes, programs, and activities or on any other basis. All students may petition the President for exclusion from the program entirely, and may challenge the accuracy of any results obtained under the program through internal challenges, appeals and grievances provided by the College.  An

automatic stay is provided upon requesting exclusion, lasting until all appeal and grievance avenues are exhausted. In addition, prior to the procedures specific to the drug testing program being initiated, a student grievance process was already in place, which would have provided the same protections. No testing would be performed until this process is complete.

In essence, the competing arguments and theories of the parties before the Court boil down to whether the procedure chosen by the college to identify students who are not involved in safety-sensitive classes, activities, or programs, as well as those who object to participating to the drug testing program, imposes a burden on the individual student which is unreasonable in the context of the constitutionality of the drug testing program as a whole.

In terms used by the District Court, the question is whether the college's chosen method of identifying students who may not be constitutionally required to participate in a drug test is an unconstitutional requirement or is it a constitutionally permissible method of providing the college information necessary to allow an informed and accurate determination of whether the particular student at issue may be constitutionally required to participate in the college's mandatory drug testing. Seen in this light, the most basic question for this Court to determine is not whether Linn State's drug testing program policy is constitutional, but

Appellate Case: 13-3264   Page: 45   Date Filed: 12/23/2013 Entry ID: 4108364

whether the method chosen to gather information is an unconstitutional burden on the students' enjoyment of their Fourth Amendment rights.

The District Court incorrectly found two faults in the petition system: 1) that no precedent supported requiring people to opt in to a constitutional right (AA p. 318); and 2) that Appellants were better situated than students to know whether they were enrolled in safety-sensitive classes. AA p. 319-20. The District Court also doubted that students were aware of the option, because of the late release of the procedural details of the policy. *Id*. This last is incorrect as being moot for most students now that two years have passed, and ignores the fact (as regards named Appellees) that there was already a well-known and used student grievance process in place long before the drug testing policy. T1 p. 129-130; T2 p. 84-88.

First, Appellant's proposed system of having students petition to opt out of the program for various reasons is not wildly different than other situations in constitutional jurisprudence. Persons being questioned by a police officer must clearly opt in to their Fifth Amendment "Miranda rights" to remain silent and have an attorney present, or the authorities will presume the person has waived these rights. *See, e.g*. *Minnick v. Mississippi*, 498 U.S. 146, 151(1990). Although no case directly addressing the issue in the context of the facts of this case has been found, the Eighth Circuit has recognized the constitutionality of a state college using a presumption that the presence of a student at a gathering sufficient to justify

discipline even in the context of the protected First Amendment speech and assembly. *Esteban v. Central Missouri State College,* 415 F. 2d 1077 (8th Cir. 1969). The basic question of suspicion-less searches under the Fourth Amendment is that of reasonableness, and this system is reasonable in light of the particular circumstances of the college.

Second, regarding who has the better knowledge of the particular circumstances of each individual student, including whether or not the student plans to enroll in classes outside his or her programs, this knowledge ultimately rests with the student, and having to fill out a form to ask for an ultimate determination is not burdensome. There was no evidence in the record to the contrary.

The District Court chose to ignore the reasonableness inquiry as regards the petition process, and rely on a lack of specific precedent, because to do otherwise would have rendered the as-applied challenge completely unripe. Appellees should have been required to allow the policy to proceed according to its terms, receive a decision from the President as to their request to be excused and, if their request is denied, they may then proceed to challenge the application of the policy.

Further, The District Court abused its discretion in entering a permanent injunction on the terms entered without deference to the state officials vested with power and authority to adopt, apply and initially determine issues related to the enforcement and granting of exceptions and modifications to the policy in the

orderly application of the policy without federal intervention prior to the issues

being presented and decided by the relevant state officials. *Ex parte Young* (209

U.S. 123 (1908)) and its progeny, along with the principles of comity, caution the

federal government and Article III courts not to unnecessarily interfere into the

working of state government. *See Burford v. Sun Oil Co*., 319 U.S. 315 (1943);

*Public Service Commission of Utah v. Wycoff Co*., Inc. 344 U.S. 237, 241 (1952).

In this case, the extraordinary relief sought by Appellees was neither

necessary nor warranted, because the drug screening policy has not been applied to

any of the Appellees. The District Court simply presumed that the President and

Board would act unconstitutionally when presented with appeals, without offering

any deference (AA p. 319-20) and substituted its own judgment for that of the

college.

In sum, for the reasons above, any as-applied challenge to the drug testing

policy must fail.

**IV) The District Court Erred In Entering A Permanent Injunction In That
The Remedy Ordered Is In Excess Of The Relief Plaintiffs Requested And Is
In Violation Of The Eleventh Amendment Proscription Against Damages
Against A State Institution.**

Not only is the sort of monetary relief ordered prohibited by the Eleventh

Amendment, the District Court acted without or in excess of its jurisdiction and in

violation of the principles of comity in entering an injunction requiring Linn State

Technical College to give a refund and failing to state the recipients and terms with

Appellate Case: 13-3264   Page: 48   Date Filed: 12/23/2013 Entry ID: 4108364

sufficient clarity. The District Court also erred in holding certain arguments and affirmative defenses, including under the Eleventh Amendment were abandoned or waived by Appellants.

At the time suit was filed, LSTC had previously collected a $50 fee from all involved students, to cover the cost of the testing. Plaintiffs requested, in their Second Amended Complaint (AA p. 180) that the Court issue a permanent injunction "requiring Defendants to credit any fees already assessed for unconstitutional instances of mandatory drug testing." The same language appears in the First Amended Complaint (AA p. 63) along with a separate request for damages on the same page, which was later voluntarily dismissed by Plaintiffs on September 23, 2011. AA p. 35. Plaintiffs did not request that the $50 fees be refunded as cash to the payors, but only that they be *credited*. Instead, the Court ordered Defendants "to refund the $50.00 fee any such students were assessed for the unconstitutional drug testing." AA p. 326.

## A. *Appellants are Protected by the Eleventh Amendment*

The Eleventh Amendment bars suits by private parties in federal court against states**,** where the state does not consent and no federal statute has abrogated the immunity. *Coller v. Mo. Dept. of Economic Development*, 965 F.Supp.1270, 1274 (W.D. Mo. 1997). The Eleventh Amendment has been interpreted by the U.S. Supreme Court to bar suits by a state's own citizens. *Skelton v. Henry*, 390 F.3d

Appellate Case: 13-3264    Page: 49    Date Filed: 12/23/2013 Entry ID: 4108364

614, 617 (8th Cir. 2005); citing *Hans v. Louisiana*, 134 U.S. 1, 10 (1890).

"Eleventh Amendment immunity extends to state agencies which are considered an arm of the state." *Gibson v. Arkansas Dept. of Correction*, 265 F.3d 718, 720 (8th Cir. 2001).

Linn State Technical College is an arm of the State of Missouri. The College was established by statute in 1995. R.S.Mo. § 178.631. It, as an entity, is protected by the Eleventh Amendment. The Eighth Circuit has identified two critical factors in deciding whether a college or university is protected by the Eleventh Amendment: (1) the institution's "level of autonomy" and (2) whether any judgment rendered would be paid from state funds. *Sherman v. Curators of Univ. of Mo.*, 16 F.3d 860, 864 (8th Cir.1994); citing *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir.1985). See also *Sherman v. Curators of Univ. of Mo.*, 871 F.Supp 344 (W.D. Mo.1994) (hereinafter Sherman II).

The second *Sherman* case involved the district court using the factors the Eighth Circuit named to determine whether the University of Missouri fell under the Eleventh Amendment. The court found that it did. *Sherman II* at 348. Looking at the Missouri statutes covering the creation and administration of the MU system, the court found that the University did not "enjoy a significant level of autonomy from the state." *Id*. at 346. Its curators are appointed by the state, it must make recurring financial and other reports to the state, and it is partially funded by the

Appellate Case: 13-3264    Page: 50    Date Filed: 12/23/2013 Entry ID: 4108364

state. *Id*. Regarding the second factor (whether funds for any judgment would come from the state), the court found that "a judgment against the University could not be paid from non-state funds under the University's discretionary control." *Id*. at 348. Further, the court found that "regardless of the specific accounting procedures utilized by the University, any judgment against it would ultimately be derived from the state treasury." *Id*. at 348. In other words, it did not matter that some University funding came from other sources, and it did not matter how the accounts were kept, whether commingled or not; it would all either be funds directly from the state or would affect the state's treasury. *Id*.

The same is true of Linn State Technical College. The statutory scheme creating and controlling LSTC is very similar to that of the MU system (in fact some of the statutes are the same). LSTC was created by statute. R.S.Mo. § 178.631.[4] Its Curators are appointed by the Governor. R.S.Mo. § 178.632. It must provide financial and other reports to the state, and has considerable state oversight. *See* R.S.Mo. §§ 178.632—178.639, *see also* 178.530, 178.550, 178.560, and 178.585. As shown by several of those same statutes, it gets significant state funding. Therefore it does not enjoy much autonomy from the state. As for the second factor, any judgment rendered would either come directly out of state funds, or would directly affect the state's treasury. How the College has its

---

[4] All cited Missouri statutes are current through 2013.

Appellate Case: 13-3264    Page: 51    Date Filed: 12/23/2013 Entry ID: 4108364

accounts set up does not matter. Under the factors set forth in *Sherman* and *Greenwood*, LSTC is entitled to Eleventh Amendment immunity.

The members of the Board of Regents share in this Eleventh Amendment immunity. The Board is the governing body of LSTC. R.S.Mo. § 178.632. R.S.Mo. § 178.635 states that the Board is to be organized in the same manner as the Curators of the University of Missouri and that LSTC's Board has the same "powers, duties, authorities, responsibilities, privileges, immunities, liabilities and compensation" as the Curators of the University of Missouri. *See also* R.S.Mo. Chapter 172. The individual members of the Curators of the University of Missouri have been found to be officers of the state and are entitled to Eleventh Amendment immunity. *James v. Board of Curators of the University of Missouri, et al.*, 2011 WL 147910 (E.D.Mo.); *citing Ormerod v. Curators of University of Missouri*, 97 Fed. Appx. 71, 72 (8th Cir. 2004). Following the statutory language, because the Curators of the University of Missouri are state officers, so are members of the Board of Regents of Linn State Technical College. The President of the college is also a state officer. *Id*.

As such, the LSTC Board members and President have been sued separately, in their official capacities, in order to avoid the Eleventh Amendment stricture against suing a state entity in federal court. The *Ex parte Young* doctrine, first advanced in the 1908 U.S. Supreme Court case by that name, allows for such suits,

45

using the legal fiction that suing state officers in their official capacities is not suing the state itself.[5] However, although the doctrine allows suits against state officers, the relief available is not unlimited, and does not include retrospective monetary relief. *See* Sections IV C and D.

**B.    *Appellants Have Not Waived Eleventh Amendment Immunity***

Appellants here have not performed any action which would have waived their Eleventh Amendment immunity. In *Skelton v. Henry*, 390 F.3d 614, 616-17 (8th Cir. 2005), one of the main issues on appeal was whether defendants (Missouri officials involved in child support enforcement) had waived their Eleventh Amendment immunity by appearing in federal court to defend the suit, and by filing a counterclaim and third party claim in their Answer. The court found that they had not. *Id.* at 619.  They did not initiate the suit, had not chosen the federal forum, and had raised the Eleventh Amendment defense promptly in their Answer.  Id. at 618.  The focus was on whether the state was trying to use federal jurisdiction in an unfair manner, by invoking immunity and at the same time invoking federal jurisdiction. Id.

Here, Appellants have done nothing to take unfair advantage of federal jurisdiction. The actions here are much the same as in *Skelton*.  Appellants did not "voluntarily [submit their] rights for judicial determination" in federal court.

---

[5] *Ex parte Young*, 209 U.S. 123 (1908).

Appellate Case: 13-3264    Page: 53    Date Filed: 12/23/2013 Entry ID: 4108364

*Skelton* at 618, <u>*citing*</u> *Lapides v. Bd. of Regents*, 535 U.S. 613, 618-19 (2002).

Appellants did not initiate the suit or request removal. Appellants raised the

Eleventh Amendment as an affirmative defense in a timely manner, in their

Answers to each complaint filed by Appellees.  AA p. 75, 237.  No statute

authorizes waiver for any cause of action stated here.  The District Court stated in

its Order granting the permanent injunction that defenses not briefed at trial had

been waived by Appellants. AA p.321. This is incorrect. The Supreme Court and

Eighth Circuit have found that such immunity is in the nature of a subject matter

jurisdiction issue, and can only be waived by express consent (which has not

happened here). *Meiner v. State of Missouri*, 673 F3d 969, 981(1982); *Edelman v.*

*Jordan*, 415 U.S. 651, 677-678 (1974). This immunity may be argued for the first

time on appeal. *Edelman* at 678.

      Further, Appellants were working under a good faith belief that Appellees

were not seeking a cash refund of the $50 fee charged, or any other type of

damages, because Plaintiffs voluntarily dismissed their claim for damages on

September 23, 2011, and all of their Complaints otherwise asked solely for a *credit*

of the $50 fee, not a *refund*. Therefore this was not an issue that was briefed or

discussed at trial. Eleventh Amendment immunity applies to these Appellants.

Eleventh Amendment immunity has not been waived by any Appellant.

**C.**    ***The District Court Had No Subject Matter Jurisdiction Over Retrospective***
     ***Monetary Relief***

Under the Eleventh Amendment, The District Court had no subject matter jurisdiction over any retrospective claim for monetary relief from these officials. *Edelman v. Jordan*, 415 U.S. 651 (1974); *See also* *Scott v. PSRS of Missouri*, 2010 WL 3749210, at *3 (unpublished). The burden of establishing federal subject matter jurisdiction is on the party who wishes to establish it. *Great Rivers Habitat Alliance v. Federal Emergency Management Agency*, 615 F.3d 985, 989 (8th Cir. 2010). Appellees have failed to establish any basis for such jurisdiction here. *See* below Section IV D.

### D.     *The Ordered Relief is Impermissible Retrospective Monetary Relief Sought From State Officers*

The doctrine announced in *Ex parte Young* only allows for prospective, injunctive relief against state officers who are sued in their official capacities. *Edelman v. Jordan*, 415 U.S. 651, 664 (1974).  Retrospective monetary relief paid out the state treasury is not allowed. *Id*. at 666; *Skelton v. Henry*, 390 F.3d 614, 617 (8th Cir. 2005); *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997).

*Edelman* involved Illinois state officials who wrongfully withheld federal/state aid money from aged, blind and disabled persons. *Id*. at 653.  The Seventh Circuit had ordered that the previously withheld money be released to the applicants. *Id*. at 657.  The U.S. Supreme Court reversed that portion of the decision, stating that "[T]he rule has evolved that a suit by private parties seeking

48

to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Id.* at 663. The Court noted that the funds to pay any award would come out of the state treasury, not out of the pockets of the state officials (*Id*. at 665), and that this type of award is essentially damages, no matter what name it is given (*Id*. at 666). The prohibition on retrospective monetary relief holds true whether it regards releasing previously withheld payments, as in *Edelman*, or in refunds of money (for example taxes) wrongfully collected. *Id*. at 669. <u>*See also*</u> *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945) (overruled on other grounds).

Here, retrospective monetary relief paid out of the state treasury is exactly what the lower court has ordered. The College is to refund the $50 fee charged for the drug testing. A refunds is by nature retrospective. In fact, the language "requiring Defendants to credit any fees *already assessed*" (First Amended Complaint p. 9, emphasis added) shows definitively that this is a request for retrospective monetary relief. The Order has not been made to these officials as individuals, but as officials, meaning that any payment awarded will come out of the College's funds, which, as stated above, are state funds.

The specific statute under which Appellants were sued does not allow this sort of relief. Plaintiffs suing state entities under the *Young* doctrine, suing state officers in their official capacities only, cannot be awarded monetary damages

Appellate Case: 13-3264     Page: 56     Date Filed: 12/23/2013 Entry ID: 4108364

pursuant to 42 U.S.C. § 1983 (2010). Section 1983 allows for various types of suits against any "person" who, while acting under the color of state law, deprives another of rights secured by the Constitution. Section 1983 does not override Eleventh Amendment immunity. *Coller v. Mo. Dept. of Economic Development*, 965 F.Supp.1270, 1276 (W.D. Mo. 1997). State officials being sued in their official capacities under the *Young* doctrine may be sued for prospective injunctive relief under § 1983. *Id.*; *Murphy v. State of Ark.*, 127 F.3d 750, 754 (8th Cir. 1997). However, Eleventh Amendment immunity still applies in such suits under the *Young* doctrine; such officials may not be sued for retrospective monetary damages. *See id.* at 755, *Treleven v. U. of Minn.*, 73 F3d 816, 819 (8th Cir. 1996); *Scott v. PSRS of Missouri*, 2010 WL 3749210, at *9. Appellees have clearly sued Appellants in their official capacities only, not as individuals, foreclosing money damages based on § 1983. AA p. 172.

Citing a dissenting opinion in *Bowen v. Massachusetts*, 487 U.S. 879, 913-914 (1988), which had nothing to do with Eleventh Amendment Immunity or the *ex parte Young* doctrine, the District Court incorrectly classified the ordered monetary relief as "specific relief" instead of retrospective monetary damages, to attempt to validate such relief. AA p. 326. *Bowen* dealt with claims under 5 U.S.C.A. § 702, which expressly waives sovereign immunity for certain claims against the federal government, and does not apply to this case. The Eighth Circuit

has already declined to extend *Bowen* to cases where there is, as here, no express waiver of sovereign immunity for monetary claims. *United States v. Hall*, 269 F.3d 940, 942-943 (8th Cir. 2001) (sovereign immunity barred monetary damages for wrongfully seized property). Therefore, even if *Bowen* were on point, it is inapposite here.

The correct standard is found in *Meiner v. State of Missouri* at 982, where appellant sought compensatory educational services:

> Appellant seeks such compensatory services from the state as are necessary "to overcome the effects of any wrongful denial of special educational services." The eleventh amendment bars such services if they are a form of retroactive compensation "measured in terms of a monetary loss resulting from a past breach of legal duty." *Edelman v. Jordan*, supra, 415 U.S. at 668, 94 S.Ct. at 1358; *Nevels v. Hanlon*, supra, 656 F.2d at 377. On the other hand, the eleventh amendment is no bar if the relief appellant seeks can fairly be characterized as "a necessary consequence of compliance in the future with a substantive federal question determination." *Edelman…* at 668… 94 S.Ct. at 1358.
> The relief that has been ordered here is simply retrospective damages, in the

nature of a monetary loss from what the District Court perceived as a past breach of legal duty. It cannot be construed as natural consequences of prospective, injunctive action, and is impermissible.

## E.   *The Relief Ordered is Indefinite and in Excess of Appellee's Requests*

The relief is indefinite, and Appellants are not on notice as to exactly whom they are ordered to refund money. Some of the students were found to be constitutionally tested under LSTC's policy, and some were apparently found to be

Appellate Case: 13-3264     Page: 58     Date Filed: 12/23/2013 Entry ID: 4108364

constitutionally tested under other policies, and the District Court stated that the LSTC policy did not apply to those students. Consequently, it is unclear from the District Court's Order whether or not money must be refunded to Heavy Equipment Operations students, students seeking Commercial Driver's Licenses, and Power Sports students, among others. Some students from whom samples were collected may have changed and entered programs where they could be constitutionally tested. In sum, Appellants are not on notice as to exactly which tested students' funds must be refunded.

Further, the District Court erred in granting relief beyond that requested by the Appellants in their Complaints and Motions. Specifically, Plaintiffs challenged the procedures issued by the President of the College to implement the drug screening policy adopted by the governing board of the College. Nowhere in either Complaint is the policy adopted by the Board of Regents on June 17, 2011, mentioned. To the contrary, the only policy challenged in the Complaints is the procedural policy implemented by the President of the College, issued on September 6, 2011.

Regarding the return or destruction of the urine samples, LSTC is not the current physical custodian of the samples and does not have them in its possession and control. They are in the custody of Employee Screening Services. LSTC can request the return of the samples, but the company has its own policy and interest

in the samples because returning them could cause liability issues for the testing company itself. Further, again LSTC does not know exactly who was or was not constitutionally tested pursuant to this Order. The ordered relief is unclear.

## CONCLUSION

Appellants/Defendants urge this Court to reverse the Judgment entered in favor of Appellees/Plaintiffs in all respects. Specifically, the entry of the Permanent Injunction and any other findings and relief made by the district court should be reversed and the case remanded for entry of judgment in far of Appellants/Defendants with costs. In the alternative, if the judgment is not reversed in its entirety, the injunctions should be dissolved, the case remand for entry of declaratory relief only or for further evidentiary hearing and entry of a more narrow, specifically defined and appropriate injunction and proceedings consistent with the direction of this court.

Respectfully Submitted,

_/s/__Kent L. Brown_____
Kent L. Brown                    #38992MO
Judith Anne Willis              #63327MO
621 E. McCarty Street, Suite A
Jefferson City, MO 65101
Telephone (573) 635-4971
Facsimile (573) 635-7675
**ATTORNEYS FOR DEFENDANT**

53

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,779 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally space typeface using Word 2010 in Times New Roman, 14 point.

3.  This brief has been scanned for viruses and is virus-free.

/s/ Judith Anne Willis
Judith Anne Willis

Dated: December 19, 2013

Appellate Case: 13-3264   Page: 61   Date Filed: 12/23/2013 Entry ID: 4108364

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on December 19, 2013, a copy of the

foregoing Appellants' Brief was sent, via the Eighth Circuit Electronic Court

Filing system, to the following:

Anthony E. Rothert
Grant R. Doty
ACLU Eastern Missouri
454 Whittier Street
St. Louis, MO 63108
Ph   (314) 652-3114
Fax (314) 652-3112

Jason D. Williamson
ACLU Foundation
125 Broad Street, 18th Floor
New York, New York 10004
Ph   (212) 284-7340
Fax (212) 549-2654

_____/s/ Judith Anne Willis_____
Judith Anne Willis

Appellate Case: 13-3264     Page: 62     Date Filed: 12/23/2013 Entry ID: 4108364